# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0354-25

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

H.D.,[1]

      Defendant-Appellant.

_____

      Submitted June 3, 2026 – Decided July 30, 2026

      Before Judges Rose and DeAlmeida.

      On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 09-09-3359.

      Afonso Archie Law PC, attorneys for appellant (Troy A. Archie, on the briefs).

      Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Jason Magid, Assistant Prosecutor, of counsel and on the brief).

---

[1] We use initials to preserve the confidentiality of domestic violence records, R. 1:38-3(d)(9), and the victim, R. 1:38-3(d)(10). See also R. 1:38-3(f)(2) (excluding from public access expungement records).

PER CURIAM

Defendant H.D. appeals from the August 18, 2025 Law Division order denying his motion pursuant to Rule 4:50-1 to vacate an April 12, 2010 consent order permanently forfeiting and revoking his firearm purchaser identification card (FPIC) and permits to purchase handguns (PPHs) in exchange for dismissal of an indictment charging him with three offenses, including two firearms offenses. We affirm.

I.

The State alleged that on April 26, 2009, defendant brandished a black handgun at a family gathering in a home in Pennsauken Township and ordered everyone present to leave the residence. Responding officers arrested defendant.

On April 28, 2009, L.M.D. filed a domestic violence complaint and obtained a temporary restraining order (TRO) against defendant pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. The record does not contain a copy of the domestic violence complaint. We are, therefore, unable to identify the allegations on which L.M.D. based her claims. It appears, however, the complaint arose from the incident on April 26, 2009. At the time the TRO was issued, police seized thirty handguns and long guns,

2

ammunition, gun magazines, swords, a knife, and a machete from the residence. See N.J.S.A. 2C:25-21(d)(1)(b) (requiring a law enforcement officer responding to a report of domestic violence to seize every weapon present at the premises that the officer reasonably believes would expose the victim to a risk of serious bodily injury).

On June 18, 2009, the court dismissed L.M.D.'s domestic violence complaint and dissolved the TRO. The record does not contain evidence explaining the reason for the dismissals.

A Camden County grand jury indicted defendant, charging him with: (1) third-degree terroristic threats, N.J.S.A. 2C:12-3; (2) second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d), a Graves Act offense, see N.J.S.A. 2C:43-6(c); and (3) second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(f).

On April 12, 2010, the court held a hearing resulting in the dismissal of the indictment and entry of a consent order. The relevant portions of the transcript of the hearing follow:

> [ASSISTANT PROSECUTOR]: Your Honor, in this matter we[ have] negotiated a resolution to this case. The State is moving for dismissal of the indictment 3359-09-09. It is a Graves Act charge, single[-]count indictment [alleging] possession of a

3

weapon with an unlawful purpose against the person of another.[2]

In this matter, in assessing the proofs in this case, the facts of the case, the State feels that it probably will not be able to sustain its burden of proof to prove that Graves Act charge beyond a reasonable doubt in a trial.

In negotiation[,] the defendant has agreed to forfeit the various weapons he currently owns – or not forfeit the weapons, arrange for the sale and transfer of those weapons, which is the subject of this consent order, and also forfeiture of his purchaser permits and other permits. So we've signed a consent order and presented [it] to the court.

THE COURT: [Defense counsel], is that your understanding of the resolution?

[DEFENSE COUNSEL]: That's my understanding as well as my client's, Your Honor.

THE COURT: Now, the order does provide that he[ is] to surrender his purchaser ID card to the Prosecutor's Office. My understanding [is] he cannot locate it at this time?

[DEFENSE COUNSEL]: That is correct, Judge. If he does find it, I will hand deliver it to the Prosecutor's Office. He's been out of the house for approximately a year.

THE COURT: Yeah, but he understands that permit is void and if he tries to use it, it's going to be a criminal offense.

---

[2] The indictment was not provided on appeal. Therefore, it is unclear why the assistant prosecutor described the indictment as having a single count.

4

[DEFENSE COUNSEL]: He understands that, Judge.

Pursuant to the State's motion, the judge dismissed the indictment.

On April 12, 2010, the court entered a consent order pursuant to the PDVA which noted defendant was "CONSENTING to said forfeiture and revocation." The order directed: (1) "any and all" FPICs and PPHs issued to defendant "are hereby forever revoked and forfeited" pursuant to the PDVA; (2) defendant to "immediately surrender" to the Camden County Prosecutor's Office (CCPO) all FPICs and PPHs issued to him; (3) defendant to "make the appropriate arrangements with a qualified and licensed New Jersey [f]irearms [d]ealer for proper disposal (consignment[,] sale[,] or transfer to a licensed New Jersey [FPIC] and permit holder) of seized weapons that are in the custody and control of the [CCPO], previously seized on April 26, 2009"; and (4) said weapons be transferred to a specified firearms dealer, or upon appropriate licensing, to defendant's brothers, both of whom were employed by the Division of Parole. Both defendant and his counsel signed the consent order.[3]

---

[3] The consent order also stated it was based on two Department of Law and Public Safety regulations, N.J.A.C. 13:54-1.10 and :54-2.3.

A-0354-25

On August 16, 2024, the Law Division issued an order expunging the records of defendant's arrest and indictment arising from the April 26, 2009 incident.

On September 1, 2024, defendant applied to the Pennsauken Township Police Department (PTPD) for an FPIC and a PPH.

On February 12, 2025, PTPD Chief Philip Olivo denied defendant's application. In support of his decision, Olivo relied on N.J.S.A. 2C:58-3(c)(8), which provided a FPIC and a PPH "shall not be issued . . . [t]o any person whose firearm is seized pursuant to the [PDVA] and whose firearm has not been returned."

Defendant subsequently filed a motion in the Law Division pursuant to Rule 4:50-1(e) and (f) to vacate the April 12, 2010 consent order. He argued the consent order should be vacated because: (1) his FPIC, PPHs, and weapons were not forfeited pursuant to the PDVA, as the consent order memorialized a private transfer of his weapons and can be vacated at his request; (2) a permanent bar on issuance of permits to purchase and possess handguns, as reflected in the consent order if it is not vacated, would violate the Second Amendment, as interpreted in New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022), and subsequent opinions; and (3) the circumstances resulting in issuance of the

6

consent order have materially changed, given that defendant divorced the alleged victim in 2014, had no contact with her since 2016, lived alone, and was infraction free since 2009. The State opposed the motion.[4]

On August 18, 2025, the court issued an oral decision denying defendant's motion. The court found vacating the consent order was not warranted. With respect to subsection (e) of Rule 4:50-1, the court found

> that it[ is] not [an] extreme or an unexpected hardship, that the defendant would not be able to possess a firearm based on this [c]onsent [o]rder that[ is] in place. This restriction on his ability to own a firearm, that was contemplated by the parties. In fact, the moving parties agreed to have his firearms transferred to [a specific] indoor pistol range. And this agreement was subsequent to the dismissal of the [TRO] against him. So, I find based on the foregoing, . . . he[ has] failed to demonstrate that the [o]rder forfeiting his firearm[s] should be vacated under section (e).

The court continued:

> In looking at 4:50-1(f), a [j]udgment can be vacated for any other reason justifying relief from the operation of the [j]udgment or [o]rder. Under subsection (f) an applicant seeking relief must

---

[4] There is a suggestion in the record defendant also filed an appeal of the denial of his application for a FPIC and a PPH, but withdrew that appeal before moving to vacate the consent order. We, therefore, offer no opinion with respect to the denial of his application. As a result, we have no occasion to determine whether M.S. v. Millburn Police Dep't, 197 N.J. 236 (2008), governs an appeal from the denial of defendant's application, or whether N.J.S.A. 2C:58-3(c)(8), as applied to defendant, would withstand constitutional scrutiny.

A-0354-25

demonstrate truly exceptional circumstances to be granted relief from judgment which must be evaluated on a case-by-case basis.

I find . . . there [are] no truly exceptional circumstances which would necessitate relief under subsection (f). There [is] no new information that[ has] come to light in relation to the moving party's initial domestic violence matter. Again, I emphasize that [the] TRO was dismissed prior to the parties' entering into this agreement for the forfeiture of those firearms and his permit to purchase a firearm.

Finally, defense [counsel] simply argues that the [c]onsent [o]rder no longer serves the legitimate government purpose as [the] domestic violence charge was related to family members and not his ex-wife. When I look at what[ is] before the court, . . . there[ is] no statutory interpretation needed I find because the statute is clear. A forfeiture under the [PDVA] is certainly permissible.

. . . .

[T]here was a finding on the record [defendant] did agree to forfeit his weapons under the [PDVA].

The court determined it need not decide defendant's constitutional arguments because he did not establish the consent order in which he waived those rights should be vacated.[5]

---

[5] The court summarily found defendant did not establish relief was warranted under subsections (a), (b), (c), and (d) of Rule 4:50-1. Defendant does not cite these subsections in his merits brief. We, therefore, consider any arguments

An August 18, 2025 order memorialized the motion court's decision. This appeal followed.

Defendant makes the following arguments.

POINT I

THE [MOTION] COURT MISAPPLIED N.J.S.A. 2C:58-3(c)(8) BY CONFLATING A PRIVATE MARITAL TRANSFER WITH A PDVA WEAPONS FORECLOSURE.

POINT II

THE 2010 CONSENT ORDER WAS NOT A PDVA FORFEITURE BUT A CRIMINAL-CASE DISPOSITION EXECUTED AFTER DISMISSAL OF BOTH THE TRO AND THE INDICTMENT; THE TRANSCRIPT OF [THE APRIL 12, 2010 HEARING] CONFIRMS THIS.

POINT III

[THE MOTION COURT] MISAPPLIED RULE 4:50-1 BY ASSUMING A PDVA JUDGMENT EXISTED WITHOUT FIRST DETERMINING WHETHER THE CONSENT ORDER WAS A PDVA JUDGMENT AT ALL.

---

concerning these subsections waived. "[A]n issue not briefed is deemed waived." Pressler and Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2026); see also Telebright Corp. v. Dir., Div. of Tax'n, 424 N.J. Super. 384, 393 (App. Div. 2012) (deeming a contention waived when the party failed to include any arguments supporting the contention in its brief).

A-0354-25

## POINT IV

[THE MOTION COURT'S] EXPRESS REFUSAL TO APPLY BRUEN, [ATTY. GEN. OF THE UNITED STATES V. RANGE, 69 F.4TH 96 (3d CIR. 2023), UNITED STATES V. PEREZ,] AND POST-BRUEN NEW JERSEY LAW CONSTITUTES REVERSIBLE ERROR.[6]

## POINT V

THE APPELLATE DIVISION HAS AUTHORITY UNDER RULES 2:9-1(a) AND 2:11-3(b) TO GRANT FINAL RELIEF AND SHOULD ORDER IMMEDIATE RESTORATION OF [DEFENDANT'S] SECOND AMENDMENT RIGHTS WITHOUT REMAND.

## II.

Rule 4:50-1 provides, in relevant part:

> [o]n motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons:  . . . (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or

---

[6]  The reference to United States v. Perez appears to be to an unpublished decision of the United States District Court for the Western District of Pennsylvania included in defendant's appendix.  Appellant's counsel did not certify he complied with his obligation to serve the court and opposing counsel "all contrary unpublished opinions known to" him.  R. 1:36-3.

A-0354-25

order.

An application to set aside an order pursuant to Rule 4:50-1 is addressed to the motion judge's sound discretion, which should be guided by equitable principles. Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994). A trial court's determination under Rule 4:50-1 is entitled to substantial deference and will not be reversed in the absence of a clear abuse of discretion. US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012). To warrant reversal of the court's order, defendant must show the decision was "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Ibid. (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007) (internal quotations omitted)).

In determining whether a party should be relieved from a judgment or order, courts must balance "the strong interests in the finality of litigation and judicial economy with the equitable notion that justice should be done in every case." Jansson v. Fairleigh Dickinson Univ., 198 N.J. Super. 190, 193 (App. Div. 1985). Where a procedural violation is involved, additional considerations are implicated, namely, "'[t]he defendant's right to have the plaintiff comply with procedural rules[, which] conflicts with the plaintiff's right to an adjudication of the controversy on the merits.'" Abtrax Pharms., Inc. v. Elkins-

A-0354-25

<u>Sinn</u>, 139 N.J. 499, 513 (1995) (quoting <u>Zaccardi v. Becker</u>, 88 N.J. 245, 252 (1982)).  In all cases, however, "'justice is the polestar and our procedures must ever be moulded and applied with that in mind.'"  <u>Jansson</u>, 198 N.J. Super. at 195 (quoting <u>N.J. Highway Auth. v. Renner</u>, 18 N.J. 485, 495 (1955)).

"The rule does not distinguish between consent judgments and those issued after a trial.  So long as the judgment is final, the rule is applicable."  <u>DEG, LLC v. Twp. of Fairfield</u>, 198 N.J. 242, 261 (2009).  "Indeed, a consent judgment 'is an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees.'"  <u>Ibid.</u> (quoting <u>Rufo v. Inmates of the Suffolk Cnty. Jail</u>, 502 U.S. 367, 378 (1992)).

> Significantly, <u>Rule</u> 4:50-1 is not an opportunity for parties to a consent judgment to change their minds; nor is it a pathway to reopen litigation because a party either views his settlement as less advantageous than it had previously appeared, or rethinks the effectiveness of his original legal strategy.  Rather, the rule is a carefully crafted vehicle intended to underscore the need for repose while achieving a just result.  It thus denominates with specificity the narrow band of triggering events that will warrant relief from judgment if justice is to be served.  Only the existence of one those triggers will allow a party to challenge the substance of the judgment.
>
> [<u>Id.</u> at 261-62.]

Relief under subsection (e) of <u>Rule</u> 4:50-1 "is rooted in changed circumstances that call the fairness of the judgment into question." <u>Id.</u> at 265-66. "The party seeking relief bears the burden of proving that events have occurred subsequent to the entry of a judgment that, absent the relief requested, will result in 'extreme' and 'unexpected' hardship." <u>Little</u>, 135 N.J. 285-86 (quoting <u>Mayberry v. Maroney</u>, 558 F.2d 1159, 1163 (3d Cir. 1977)).

Relief under subsection (f) of <u>Rule</u> 4:50-1 is available only when "truly exceptional circumstances are present." <u>Id.</u> at 286 (citation omitted). "The movant must demonstrate the circumstances are exceptional and enforcement of the judgment or order would be unjust, oppressive or inequitable." <u>Johnson v. Johnson</u>, 320 N.J. Super. 371, 378 (App. Div. 1999) (citation omitted).

Our review of the record reveals no basis on which to reverse the court's denial of defendant's motion. We disagree with defendant's argument the consent order was not entered pursuant to the PDVA. The record establishes otherwise.

N.J.S.A. 2C:25-21(d) provides in relevant part:

> (1) In addition to a law enforcement officer's authority to seize any weapon that is contraband, evidence or instrumentality of crime, a law enforcement officer who has probable cause to believe that an act of domestic violence has been committed shall:

13

(a) question persons present to determine whether there are weapons on the premises; and

(b) upon observing or learning that a weapon is present on the premises, seize any weapon that the officer reasonably believes would expose the victim to a risk of serious bodily injury. If a law enforcement officer seizes any firearm pursuant to this paragraph, the officer shall also seize any [FPIC] or [PPH] issued to the person accused of the act of domestic violence.

(2) A law enforcement officer shall deliver all weapons, [FPICs] and [PPHs] seized pursuant to this section to the county prosecutor and shall append an inventory of all seized items to the domestic violence report.

"Weapons seized in accordance with the [PDVA] shall be returned to the owner except upon order of the Superior Court." N.J.S.A. 2C:25-21(d)(3). To obtain an order preventing the return of weapons seized in accordance with the PDVA, a county prosector

who has possession of the seized weapons may, upon notice to the owner, petition . . . the Family Part within [forty-five] days of seizure, to obtain title to the seized weapons, or to revoke any and all permits, licenses and other authorizations for the use, possession, or ownership of such weapons . . . or may object to the return of the weapons . . . on the grounds that the owner is unfit or . . . poses a threat to the public in general or a person or persons in particular.

[Ibid.]

14

When a county prosecutor makes an application pursuant to N.J.S.A. 2C:25-21(d)(3), a hearing is held. Ibid.

> After the hearing the court shall order the return of the firearms, weapons and any authorization papers relating to the seized weapons to the owner if the court determines the owner is not subject to any of the disabilities set forth in [N.J.S.A. 2C:58-3(c)] and finds that the complaint has been dismissed at the request of the complainant and the prosecutor determines that there is insufficient probable cause to indict; or if the defendant is found not guilty of the charges; or if the court determines that the domestic violence situation no longer exists.
>
> [Ibid.]

If "the court determines that the weapons are not to be returned to the owner," it may: (1) for weapons other than firearms, order their disposal by the county prosecutor "if the owner does not arrange for the transfer or sale . . . to an appropriate person[;]" (2) "[o]rder the revocation of the owner's [FPIC] or any permit, license or authorization, in which case the court . . . shall order the prosecutor to dispose" of all firearms seized "if the owner does not arrange for the sale of the firearms to a registered dealer of the firearms[;]" or (3) "[o]rder such other relief as it may deem appropriate." N.J.S.A. 2C:25-21(d)(3)(a) to (c).

The record establishes defendant's weapons were seized pursuant to the PDVA shortly after the victim filed a domestic violence complaint. At the time

the consent order was entered, the county prosecutor had the option of pursuing the forfeiture of defendant's weapons and revocation of his FPIC and PPHs pursuant to N.J.S.A. 2C:25-21(d)(3), and (d)(3)(a). In negotiations to resolve the pending indictment, defendant agreed to consent to the entry of an order granting the State the relief it could have sought under the PDVA. In exchange, the State agreed to dismissal of the indictment.

The consent order, which defendant and his counsel signed, provided defendant was "CONSENTING to said forfeiture and revocation" and "any and all [FPICs] and [PPHs] of [d]efendant . . . are hereby forever revoked and forfeited pursuant to" the PDVA. Defendant also agreed to surrender his FPIC and PPHs to the county prosecutor and to arrange for the transfer of the seized weapons to a licensed firearms dealer or to his brothers if they obtained the appropriate licensing in a timely fashion. This is precisely the relief the county prosecutor could have sought under the forfeiture provisions of the PDVA.

The fact defendant agreed to the entry of the consent order in exchange for the dismissal of an indictment does not change the nature of the relief granted in the order. Defendant consented to the permanent forfeiture of the seized weapons, and the permanent revocation of his FPIC and PPHs, under the PDVA.

16

Defendant's claim the consent order was a "private marital transfer" of weapons is nonsensical. The order was entered by a court as an element of a negotiated resolution of criminal charges. It was not a private agreement. In addition, the order addressed weapons in the possession of the county prosecutor as the result of a seizure pursuant to the PDVA. The order did not address purely private conduct. The consent order also required defendant to surrender his FPIC and PPHs to the county prosecutor. This aspect of the order did not involve a transfer of weapons to a private party, but a permanent forfeiture of defendant's weapon-related privileges to the State.

Nor is there support in the record for defendant's claim the consent order did not effectuate a forfeiture. The initial paragraph of the order stated defendant was "CONSENTING to said forfeiture and revocation" of "any and all permits, licenses, or authorizations for the use, possession or ownership of the weapons pursuant to" the PDVA. The next paragraph of the order stated defendant's FPIC and PPHs were "forever revoked and forfeited" pursuant to the PDVA. Defendant's attempt to recharacterize the consent order as something other than a forfeiture under the PDVA is contradicted by the unambiguous terms of the order.

A-0354-25

We agree with the motion court's conclusion there are no changed or exceptional circumstances since entry of the consent order warranting relief under Rule 4:50-1(e) or (f). Defendant's reported change in his domestic circumstances is not a basis for relief under the rule. The record does not support defendant's claim to have agreed to entry of the consent order to facilitate marital harmony. At the hearing which resulted in entry of the consent order, no party or the court mentioned defendant's familial circumstances as a reason for his agreement to the consent order. Nor does the consent order include any provision identifying this purported motivation for the order or linking its continued validity to defendant maintaining the status quo in his personal life. The State's agreement to dismissal of the indictment was conditioned on defendant's permanent revocation of his FPIC and PPHs. Nothing in the consent order suggests its terms would expire or be subject to judicial revision in the event defendant terminated his marriage.

Nor do recent developments in United States Supreme Court jurisprudence on Second Amendment rights warrant relief from the consent order. Defendant unequivocally agreed to a permanent restriction on his right to the licensing and permits necessary to purchase and possess handguns in exchange for the State's agreement to dismiss a three-count indictment pending

against him.  The waiver of a constitutional right is a familiar concept in the criminal arena, see State v. A.M., 237 N.J. 384, 398 (2019) (recognizing the validity of "a knowing, intelligent, and voluntary waiver" of the right against self-incrimination), as are agreements to resolve pending criminal charges, see R. 3:9-2 to -3 (establishing procedures for the negotiated resolution of criminal charges).  Changes to the contours of constitutional rights through judicial decisions are a common development.  Defendant could not reasonably have expected that Second Amendment rights would remain static after he agreed to entry of the consent order.  Nor does the consent order contain language conditioning defendant's forfeiture on Second Amendment rights remaining unchanged.  Continued enforcement of the consent order, in exchange for which defendant received a valuable benefit, is not unjust, oppressive, or inequitable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

m.c. Harley

Clerk of the Appellate Division